UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COMMERCE BANK, N.A., | |
| Plaintiff, | |
| v. | Case No. 08-cv-669-JPG |
| AMCO INSURANCE COMPANY, a wholly owned subsidiary of NATIONWIDE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant AMCO Insurance Company's Motion for Summary Judgment (Doc. 22). Plaintiff Commerce Bank has responded and AMCO has replied. Also before the Court is Commerce Bank's Supplemental Response to AMCO's Motion for Summary Judgment (Doc. 28) and AMCO's Motion to Strike (Doc. 29). The Court GRANTS the Motion to Strike Plaintiff's Supplement (Doc. 28) as an improper sur-reply prohibited by local rule. The Supplement and its attachments were not considered by the Court for purposes of deciding the Motion for Summary Judgment. For the following reasons, the Court DENIES the Motion for Summary Judgment (Doc. 22).

### BACKGROUND

Belleville Catering Company executed a promissary note to West Pointe Bank on June 14, 2004, in the amount of four hundred sixty-six thousand five hundred dollars ($466,500). On the same date, Belleville Catering executed a security agreement in which it granted West Pointe Bank a security interest in all inventory, accounts, other rights to payment, general intangibles, equipment, and the property located at 6570 North Illinois, Fairview Heights, Illinois (collectively the Collateral) to secure all present and future debts between Belleville Catering

and West Pointe Bank. West Pointe Bank perfected its interest in the Collateral by filing a Uniform Commercial Code financing statement with the Illinois Secretary of State.

AMCO and Belleville Catering Company entered into an insurance policy for the period of September 13, 2006 to September 13, 2007, whereby AMCO agreed to provide insurance coverage to Belleville Catering for its business, the Pasta House Company Restaurant, located in Fairview Heights, Illinois. The policy insured Belleville Catering's fixtures, permanently installed machinery, equipment and appliances as well as business personal, including equipment and stock. West Pointe Bank was listed on the policy as a mortgagee. In the spot on the policy asking for evidence of West Pointe Bank's interest a box marked "certificate" is checked. Additionally, West Pointe Bank is listed on the Declarations on Schedule of Loss Payees and Mortgagees as a mortgagee. Commerce Bank is successor in interest to West Pointe Bank.

On February 9, 2007, the Collateral covered by the policy was destroyed in a fire. Belleville Catering made a claim under the policy. On April 10, 2007 and April 12, 2007, AMCO issued checks to Belleville Catering in the total amount of $149,298.19. The checks were not issued payable to Commerce Bank or West Pointe Bank. Commerce Bank contends that AMCO breached the insurance contract, of which it was a third-party beneficiary, by making the checks payable to Belleville Catering rather than to Belleville Catering and Commerce Bank jointly. The policy states:

> If the Loss Payee shown in the Declarations on the Schedule of Loss Payees is a loss payable for Covered Property in which both you and a Loss Payee have an insurable interest, the following provision applies.
> We will:
> 1.       Adjust losses with you; and
> 2.       Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Commerce Bank contends that as a loss payee with an insurable interest in the Collateral, it should have been paid jointly with Belleville Catering. Commerce Bank questioned Janice Keeven, a commercial account executive with Defendant via email as to why the bank was not included on the checks. She replied, "I am not sure why Commerce wasn't included on the original check as you were listed on the policy."

AMCO, however, asserts that it is entitled to summary judgment because Commerce Bank failed to file suit within the one-year limitations period contained in the insurance policy. The limitations period contained within the policy reads:

> Legal Action Against Us
> No one may bring a legal action against us under this insurance unless:
> a.     There has been full compliance with all of the terms of this insurance; and
> b.     This action is brought within 1 year after the date on which the direct physical loss or damage occurred.

AMCO also asserts that Commerce Bank has failed to establish that it had an insurable interest in the Collateral at the time it was destroyed by the fire.

## ANALYSIS

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material

fact. *Celotex Corp.,* 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris, Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

## I. One-Year Limitations Period Clause

As noted above, the insurance policy at issue contains a one-year limitations period. The question for the Court is whether the instant action is precluded by the policy limitation. The Court concludes that it is not.

Illinois has long recognized that suit limitations periods are valid and enforceable provisions of insurance contracts.[1] *Affiliated FM Ins. Co. v. Bd. of Educ. of the City of Chicago*, 23 F.3d 1261, 1264 (7th Cir. 1994). Furthermore, such limitations periods are also binding on mortgagees suing for coverage under the policy. *Sterling Savings & Loan Assoc. v. Reserve Ins. Co.*, 211 N.E.2d 412 (Ill. App. Ct. 1965). The rationale is that suit limitations periods allow insurers to charge reduced premiums for the insurance. *Affiliated FM*, 23 F.3d at 1264. However, "as the condition is harsh in its bearing on the insured, and works a forfeiture when

---

[1]The parties agree that Illinois substantive law applies in this diversity action.

4

upheld," suit limitations clauses are strictly construed. *Downing v. Wolverine Ins. Co.*, 210 N.E.2d 603, 606 (Ill. App. Ct. 1965). Generally, in Illinois, insurance contracts are interpreted like any other contract. *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519, 523 (7th Cir. 2008) Unambiguous words in an insurance policy are given their plain, ordinary, and popular meaning. *Id*. If words are susceptible to more than one reasonable interpretation, they will be construed against the drafter. *Id*.

Here, AMCO contends that the provision, "No one may bring a legal action against us under this insurance unless. . . [t]his action is brought within 1 year after the date on which the direct physical loss or damage occurred," means that no one can bring an action for any breach of the policy unless that action is brought within one year after a direct physical loss or damage occurred. This contention requires that the Court ascribe an unnatural meaning to the word "insurance" as used in the phrase "under this insurance."

AMCO essentially asks the Court to ascribe synonymous meanings to the words "insurance" and "policy." However, the words are not synonyms. The Merriam-Webster dictionary defines "insurance" as "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." Merriam-Webster Online (www.Merriam-Webster.com) copyright © 2009 by Merriam-Webster, Incorporated. Whereas "policy" means "management or procedure based primarily on material interest." *Id*. In common usage, then, "insurance" is the coverage provided by the contract, and "policy" is the way in which that coverage is managed. Likewise, the contract itself does not use the words synonymously, but uses them in accordance with their common meanings. Written in bold letters on the first page of the contract are the words: "In return for the payment of the

5

premium and subject to all the terms of this policy, we agree to provide *the insurance stated in this policy*" (emphasis added). Therefore, neither common usage nor the provisions of the contract support the argument that "insurance" means the same thing as "policy."

Here, the clause at issue limits the time in which one must bring a legal action "under this insurance." In other words, any action related to whether a loss is a covered one must be brought within one year of the actual loss. However, this action is for a breach of contract unrelated to coverage. AMCO never denied that the fire resulted in a covered loss. In fact, it indemnified Belleville Catering for the loss. The breach of contract alleged here is of a different sort. Here, the allegation is that AMCO paid the indemnification funds in a manner inconsistent with its contractual obligations. This is an action on the "policy," but not on the "insurance." Therefore, the contractual clause limiting the time in which suit on the insurance must be brought does not apply to this action. AMCO is not entitled to summary judgment on this basis.

## II. Proof of an Insurable Interest

AMCO also contends that it is entitled to summary judgment because Commerce Bank has failed to establish an insurable interest in the Collateral. "Generally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer loss or disadvantage by its destruction." *Great-West Life Assur. Co. v. General Acc. Fire and Life Assur. Corp., Ltd.*, 452 N.E.2d 550, 554 (Ill.App. Ct. 1983)(internal citations omitted). A mortagee has an insurable interest in the collateral securing the debt in an amount equal to the balance of the debt. *Id*. Under the Uniform Commercial Code, a secured creditor has an automatic right to insurance proceeds when the collateral securing the debt is destroyed. *Fonda v. General Casualty Co. of Illinois*, 665 N.E.2d 439, 442

6

(7th Cir. 1996). However, the amount of insurance proceeds to which the secured creditor has a right depends on the amount owed on the debt. *Great West Life*, 452 N.E.2d at 554. If the debt owed the mortgagee is extinguished, the insurable interest in the collateral is also extinguished. *Insurance Co. of North America v. Citizens Insurance Co. of New Jersey*, 425 F.2d 1180, 1182 (7th Cir. 1970).

Here, Commerce Bank was a secured creditor of Belleville Catering. The bank perfected its security interest by proper filing with the Secretary of State. Therefore, at one time it had an insurable interest in the Collateral and a right to the insurance proceeds in an amount equal to the amount due on the loan.

Commerce Bank will have to prove to the satisfaction of the trier of fact what amount, if any, was due on the promissary note at the time the Collateral was destroyed. As the Court understands it, the question of how much of the insurance proceeds Commerce Bank is claiming it is entitled to has been the issue of a discovery dispute. On February 18, 2009, Magistrate Judge Wilkerson presided over a discovery dispute conference. The docket reflects that the parties have reached an agreement as to how Plaintiff will go about producing the requested proof of the amount outstanding on the loan at the time of the fire. If, at the close of discovery, Plaintiff is unable to produce competent evidence as to the continued existence or amount of its security interest in the Collateral, the Court will look favorably on a motion for summary judgment on the issue. However, at this time, AMCO has not met its initial burden of proving that there is no genuine issue of material fact as to whether and in what amount Plaintiff had an insurable interest in the Collateral.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Strike (Doc. 29) and **STRIKES** Plaintiff's Supplement (Doc. 28). The Court **DENIES** Defendant's Motion for Summary Judgment (Doc. 22).

**IT IS SO ORDERED.**
**DATED: March 17, 2009**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
